Lindsey W. Hromadka
Michelle Tafoya Weinberg
WEINBERG & HROMADKA, PLLC
P.O. Box 652
Whitefish, MT 59937
Phone: (406) 730-2988
lindsey@whlawmt.com
michelle@tafoyalawfirm.com

David K. Wilson
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP
401 N. Last Chance Gulch
Helena, MT 59601
Phone: (406) 442-3261
kwilson@mswdlaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# MISSOULA DIVISION

| | |
|---|---|
| FRIENDS OF THE FLATHEAD RIVER, a Montana Nonprofit Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. FOREST SERVICE, and LEANNE MARTEN, REGIONAL FORESTER FOR THE U.S. FOREST SERVICE REGION 1 <br><br> Defendant. | Cause No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This civil action requests declaratory and injunctive relief for violations of the Wild and Scenic Rivers Act ("WSRA"), 16 U.S.C. §§ 1271, *et seq.*, the Forest Service Organic Administration Act of 1897 ("Organic Act"), 16 U.S.C. § 551, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq*.

2. Specifically, this action seeks to compel preparation of the long overdue review and update of the Flathead Comprehensive River Management Plan required to be prepared under the Act and, until finalized and implemented, enjoin dispersed overnight camping southwest of Blankenship Bridge on the gravel bar on the Middle Fork of the Flathead River (the "Gravel Bar").

3. In 1976, Congress designated three forks of the Flathead River in Montana to be protected under the Wild and Scenic Rivers Act. 16 U.S.C. § 1274 (a)(13).

4. The WSRA requires the preparation of Management Plans to "protect and enhance…outstanding remarkable values" for "future generations."

5. The Forest Service Organic Administration Act of 1897, 16 U.S.C. § 551, requires the Forest Service to regulate the "occupancy and use" of the national forests and to "preserve the forests thereon from destruction."

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court given the Defendant is an agency within the U.S. federal government, and under 28 U.S.C. § 1331 (federal question) as this

action arises under the laws of the United States , including the National Wild and Scenic Rivers Act of 1968, 16 U.S.C. §§ 1271–1287, the Forest Service Organic Administration Act of 1897 ("Organic Act"), 16 U.S.C. § 551, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 *et seq*. An actual, justiciable controversy exists between the parties, and the requested relief is therefore proper under 28 U.S.C. §§ 2201–2202 and 5 U.S.C. § 701–06.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, Plaintiff's Directors and supporters reside in this district, and the public lands and resources in question are located in this district.

8. The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## PARTIES

9. Plaintiff Friends of the Flathead River, Inc. ("Friends") is a Montana non-profit organization, whose mission is to protect and preserve the Flathead River watershed. Many of Friends' Directors and supporters live near Blankenship Bridge on the Middle Fork of the Flathead River in Flathead County and enjoy activities such as hiking, fishing, wildlife watching, picnicking, running, and rafting within

and adjacent to the Flathead Wild and Scenic Corridor. The aesthetic, recreational, and conservation interests of Friends and its members have been, are being, and will continue to be adversely affected and irreparably harmed by Defendant's (i) failure to update the Flathead Comprehensive River Management Plan and (ii) continued authorization of overnight camping southwest of Blankenship Bridge directly on the Gravel Bar of Middle Fork of the Flathead River, causing ongoing damage to its resources.

10. Defendant United States Forest Service (the "Forest Service") is the agency charged with the administration of the designated Flathead River wild and scenic river segments at issue here and is responsible for compliance with the Wild and Scenic Rivers Act and the Travel Management Rule (36 C.F.R. §§ 212, *et. seq.*) for these designated segments.

## LEGAL BACKGROUND

### National and Wild Scenic Rivers Act

11. Congress enacted the National Wild and Scenic Rivers Act in 1968 to identify rivers that possess "outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values" and to preserve those rivers in free-flowing condition and protect their immediate environments "for the benefit and enjoyment of present and future generations." 16 U.S.C. § 1271.

12. The policy of the WRSA is to "preserve [] selected rivers or sections thereof

in their free-flowing condition *to* protect the water quality of such rivers and to fulfill other vital national conservation purposes." *Id.*

13. River corridors, including adjacent land, included in the wild and scenic rivers system are classified as wild, scenic, or recreational. *Id.* § 1273(b). Wild rivers are those rivers or sections of rivers that "are free of impoundments and generally inaccessible except by trail, with watersheds or shorelines essentially primitive and waters unpolluted." *Id.* § 1273(b)(1). These rivers represent "vestiges of primitive America." *Id.* Scenic rivers are "free of impoundments, with shorelines or watersheds still largely primitive and shorelines largely undeveloped, but accessible in places by roads." *Id.* § 1273(b)(2). Finally, recreational rivers are "readily accessible by road or railroad [and] may have some development along their shorelines, and [] may have undergone some impoundment or diversion in the past." *Id.* § 1273(b)(3).

14. Once a river is designated, the federal agency charged with administration of that corridor "shall prepare a comprehensive management plan for such river segment to provide for the protection of the river values." *Id.* § 1274(d)(1). These management plans must address resource protection, development, use, and other management practices that will achieve the purposes of the WSRA. *Id.*

15. Each component of the system, regardless of its classification as wild, scenic, or recreational, "shall be administered in such manner as to *protect and enhance* the

values which caused it to be included in said system without, insofar as is consistent therewith, limiting other uses that do not substantially interfere with public use and enjoyment of these values. *Id.* § 1281(a) (emphasis added). Further, "primary emphasis shall be given to protecting its aesthetic, scenic, historic, archeologic, and scientific features." *Id*.

16. In addition to protecting a river's free-flowing condition and outstandingly remarkable values, the WSRA specifies that managing agencies must protect the water quality of all rivers added to the National Wild and Scenic Rivers System. 16 U.S.C. §§ 1271, 1283(c).

17. The WSRA emphasizes the mandatory nature of these duties, stating that "the Secretary of Agriculture, and the head of any other Federal department or agency having jurisdiction over any lands which include, border upon, or are adjacent to, any river within the National Wild and Scenic Rivers System . . . shall take such action respecting management policies, regulations, contracts, plans, affecting such lands . . . as may be necessary to protect such rivers in accordance with the purposes of this chapter." *Id.* § 1283(a).

### National Forest Organic Administration Act

18. The Forest Service Organic Administration Act of 1897, 16 U.S.C. § 551, requires the Forest Service to regulate the "occupancy and use" of the national forests and to "preserve the forests thereon from destruction."

19. The Travel Management Rule, promulgated in 2005, requires each National Forest to identify and designate those roads, trails, and areas that are open to motor vehicle use. 36 C.F.R. §§ 212, *et. seq*. After designation of areas open to motor vehicle use, the responsible official must "monitor" the effects of motor vehicle use. 36. C.F.R. § 212.57

20. The Travel Management Rule additionally requires the responsible official to temporarily close National Forest Service lands to motor vehicle use if it is determined that the use is "directly causing or will directly cause considerable adverse effects on public safety or soil, vegetation, wildlife, wildlife habitat, or cultural resources associated with….that area…until the official determined that such adverse effects have been mitigated or eliminated and that measures have been implemented to prevent future recurrence." 36 C.F.R. § 212.52

## ALLEGATIONS COMMON TO ALL COUNTS

21. In 1976, Congress designated 219 miles of the Flathead River for inclusion in the WSRA as part of the National Wild and Scenic River ("WSR") System.

22. In 1980, the Forest Service completed the Flathead Wild and Scenic River Management Plan ("the Plan"). The Plan was intended to be a "comprehensive document for management of the Flathead National Wild and Scenic River for a *five-year period* beginning with the date of approval" and was to be "reviewed" yearly. Plan, 23 (emphasis added).

23. The Plan acknowledges the importance of the Flathead River as an "exceptionally valuable element of the nation's outdoor recreation estate[,]" but emphasizes the need to "adequately maintain resource integrity" by thoroughly monitoring resource degradation. *Id*. at 7.

24. The Plan states the intent of the Wild and Scenic Rivers Act is to "protect and enhance the water quality of those Rivers." *Id*. at 17. To that end, the Plan requires management to "give priority to protection of water quality in case of conflict between water quality and other resource uses." *Id*. at 18. The Plan acknowledges that "existing water quality is directly dependent on management activities within the watershed," and further acknowledges that "activities within the riparian zone will usually have a greater effect on water quality than activities outside this zone." *Id*. at 17.

25. The management direction in the Plan for "recreational" segments is to "(1) control access of cattle, motorized vehicles, horses, and pedestrians on river banks and channels to prevent on-site sediment erosion and downstream sedimentation[;] (2) control sanitary facilities (from houses, campgrounds, and etc.) so no pollution from them reaches river." *Id*. at 19.

26. The Plan identified migratory spawning populations of cutthroat and bull trout, the latter being an endangered species, in all three forks of the Flathead River. It also discusses the grizzly bear in depth, which were known to frequent the North

Fork and South Fork drainages. *Id*. at 14-15. According to the Plan, the "conservation of endangered and threatened species and their habitats will receive priority management with regard to facility development and recreation use." *Id*. at 14.

27. Blankenship Bridge, the precise location at issue here, is located at the confluence of the North Fork and Middle Fork designations and is included in the Lower Middle Fork Recreational WSR designation. "Recreational" river classification emphasizes "diversity of river qualities and recreational opportunities including, basically, free-flowing and unpolluted waters, ready public recreational access, potential for accommodating large numbers of recreationists with a variety of recreational experiences provided, and high scenic values." *Id*. at 3.

28. With regard to motorized use, the Plan simply states that "motorized overland vehicle travel in the corridor is generally limited to established roads due to terrain and vegetation." *Id*. at 51. The Plan allows "areas or roads in the river corridor [to] be closed to all or certain types of motorized travel to protect resource values." *Id*. at 52.

29. The Plan protects scenic qualities of the Flathead River by directing the Forest Service to "provide for a natural-appearing landscape within the classified river corridor, maintain variety in the landscape by having a mixture of openings, mature forest cover, and the various stages of forest succession[.]" *Id*. at 21.

30. In 2013, the Forest Service and the National Park Service ("NPS") completed an Outstanding Remarkable Values Assessment of the Flathead River System. According to the Assessment, the Blankenship Bridge location has outstanding fisheries, geologic, water quality, wildlife, recreation, scenic, and historic values.

31. In 2010, the Forest Service, pursuant to the 2005 Travel Management Rule, issued the "CHR Decision Notice," which allows motorized use of the area at issue.

32. Since at least 2020, the use of motorized vehicles on the Gravel Bar on the banks of the Flathead River just south of Blankenship Bridge has grown exponentially.[1] The nature of the motorized vehicle use is predominately overnight camping. Rob Davies, the Hungry Horse Ranger District Ranger, stated "It's like Daytona Beach over spring break[;] this year is off the charts in terms of use and visitation at that gravel bar." The Forest Service has admittedly failed to adequately monitor or manage this increased usage on the Gravel Bar. Instead, the Forest Service placed two temporary porta potties on the Gravel Bar itself.

33. The motorized vehicle use on the Gravel Bar is degrading the water quality of the Flathead River. The average number of camping vehicles (whether trucks, cars, recreational vehicles, etc.) have been observed to be approximately 50-70 per day during the summer months. *Affidavit of Dan Diamond*, ¶ 4, attached as Exhibit A.

---

[1] "Blankenship Bridge Camping Usage Triples Amid Pandemic," August 4, 2020; accessed at https://flatheadbeacon.com/2020/08/04/blankenship-bridge-camping-usage-triples-amid-pandemic/

The sheer number of vehicles is causing sediment and other substances to pollute the River. *Id.* at ¶ 5. Friends' Directors and supporters have witnessed the following conduct: (i) campers urinating and defecating directly into the River; (ii) campers washing dishes and throwing away food scraps directly into the River; and (iii) recreational vehicles emptying their "black tank," allowing feces and toilet paper to go directly into the river; and (iv) vehicles driving into the River and into the spawning creek adjacent to the River. *Id.* at ¶ 7, x; *Affidavit of Paul Roper*, ¶ 7, attached as Exhibit B. Friends' Directors have also witnessed dozens of campers throw their trash directly into the River or leave it on the Gravel Bar; including broken glass and human waste. *Aff. D. Diamond,* ¶ 7; *Aff. Paul Roper*, ¶ 7. In 2021, a bus drove into the rising water and became stuck in the River, clearly degrading the water quality by its mere existence in the River, which was worsened by the efforts to remove the bus from the River. *Aff. D. Diamond,* ¶ 8.




34. The overnight camping and excessive use on the Gravel Bar is also threatening the scenic views and the natural landscape of the Flathead River. *Aff. D. Diamond,* ¶ 9; *Aff. Paul Roper*, ¶ 5.

35. The overnight camping and excessive use on the Gravel Bar also pose a distinct wildfire threat. Friends counted 94 rock fire rings and campfire sites on April 14, 2022 during its last monitoring of the site. *Aff. D. Diamond,* ¶¶ 10, 11. Directors and supporters of Friends witnessed illegal campfires during the Stage 1 fire restrictions in Summer of 2022, illegal fireworks and gunfire, illegal firewood cutting, and complete disregard for wildfire safety. *Id.*

36. The overnight camping and excessive use on the Gravel Bar will likely lead to Grizzly Bear-human conflicts due to the trash issue. The pollution of the River by the human waste, vehicle use, and excessive overnight camping will likely harm the cutthroat and bull trout.

37. In 2017, the Forest Service started the process to prepare a new Comprehensive River Management Plan for the Flathead River. In 2019, the Forest Service conducted "scoping" and released a Scoping Release on July 31, 2019. In November 2021, the Forest Service stated it was to "resume" the planning process. There has been no Environmental Assessment prepared or released to date, nor a projected date for release of a final plan.

38. The Proposed Action for the Comprehensive River Management Plan, released in June 2019, recommends the Gravel Bar to be used as day use only.

**COUNT I –VIOLATION OF THE WILD AND SCENIC RIVERS ACT**

39. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

40. The Forest Service is in violation of the Plan. The Forest Service has failed to adequately monitor the overnight camping and excessive use of the Gravel Bar. The Forest Service has failed to ensure the water quality of the Flathead River is not degraded, and has failed to prioritize water quality above recreation use as directed by the Plan, by failing to manage the overnight use on the Gravel Bar. The Forest Service has failed to ensure the scenic and natural vistas are preserved by allowing dozens of motor vehicles, including large recreational vehicles, to overnight camp on the Gravel Bar for extended periods of time. The Forest Service is in violation of the Plan and the Wild and Scenic Rivers Act

41. The Forest Service has a mandatory duty to prepare a new Comprehensive Management Plan for the Flathead River. The deadline for completing a new Comprehensive Management was ostensibly in 1985. The Forest Service has continually delayed updating the Comprehensive Management Plan since 2017. The Forest Service is in violation of the Plan and the Wild and Scenic Rivers Act.

42. By failing to monitor and enforce the Plan (which remains in effect although

it is 37 years out of date), and by failing to complete a new Comprehensive River Management Plan for the Flathead River, the Forest Service has unlawfully withheld or unreasonably delayed compliance with the Wild and Scenic Rivers Act 16 U.S.C. (§§ 1271, 1274 and 1283), within the meaning of the Administrative Procedure Act. 5 U.S.C. § 706(1).

## COUNT II – VIOLATION OF THE ORGANIC ACT

43. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

44. The Travel Management Rule requires the Forest Service to "monitor" the motorized use as authorized by the CHR Decision Notice. The Forest Service has failed to monitor the exponential growth in overnight camping and excessive use of the Gravel Bar. 36 C.F.R. § 212.57.

45. The Travel Management Rule additionally requires the Forest Service to immediately close an area if it determines that motor vehicle use is "causing or will directly cause considerable adverse effects on public safety or soil, vegetation, wildlife habitat or cultural resources." 36 C.F.R. § 212.52.

46. The Forest Service has determined that motor vehicle use will cause adverse effects to the Wild and Scenic Flathead River, public safety, vegetation, and wildlife and fish spawning habitat, but has failed to immediately close the Gravel Bar to motorized use and overnight camping as required by 36 C.F.R. § 212.52.

47. Alternatively, the Forest Service has failed to monitor the motorized use at the Gravel Bar and thus has failed to determine whether motor vehicle use is causing considerable adverse effects to the Wild and Scenic Flathead River, public safety, vegetation, and wildlife habitat.

48. By failing to monitor the effects of motorized use on the Gravel Bar, and by failing to immediately close the Gravel Bar to motorized vehicle use after finding that the motor vehicle use is causing or will directly cause considerable adverse effects on the Wild and Scenic Flathead River, public safety, vegetation, and wildlife habitat, the Forest Service has unlawfully withheld or unreasonably delayed compliance with the Travel Management Rule within the meaning of the Administrative Procedure Act. 5 U.S.C. § 706(1).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment and relief from this Court in their favor and against Defendants as follows:

1. Against Defendants on all Counts:

    a. That the Court issue a declaratory judgment that the Forest Service is in violation of the Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271, 1274 and 1283;

    b. That the Court issue a declaratory judgment that the Forest Service is in violation of the Forest Service Organic Act, through the Travel Management Rule;

    c. That the Court issue a temporary restraining order and preliminary injunction enjoining dispersed overnight camping southwest of

      Blankenship Bridge on the Gravel Bar of the Middle Fork of the Flathead River, pending release and implementation of the final Comprehensive River Management Plan for the Flathead River;

d. That the Court award Plaintiffs their attorney's fees pursuant to 42 U.S.C. § 1988;

e. That the Court award Plaintiffs costs of suit; and

f. That the Court grant such other and all relief to which Plaintiffs are at law or equity entitled.

Dated this _13_ day of _May_____, 2022

                                            Weinberg & Hromadka, PLLC

                                            By: _____
                                            Lindsey W. Hromadka
                                            *Attorney for Plaintiffs*